IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEVEN LIMEHOUSE,

                Plaintiff,

  v.

KEVIN A. CARR, CHRYSTAL MARCHANT,
DR. CHERYL A. JEANPIERRE, M.D.,
APNP MARY MOORE, SYLVIA L. YOUNG,
JAMES MUENCHOW, BETH DITTMANN,
L. ALSUM, EMILY DAVIDSON, BRAD HOMPE,
C. O'DONNELL, DR. PAUL A. BEKX, M.D.,
BHS CENTRAL PHARMACY, DR. DANIEL L.
LAVOIE, M.D., DR. DANIEL L.
CAMACHO M.D., PH.D., ST. AGNES HOSPITAL,
and RADIOLOGY ASSOCIATES OF THE FOX
VALLEY,

                Defendants.

OPINION and ORDER

21-cv-175-jdp

---

      Pro se plaintiff and prisoner Steven Limehouse has filed a lawsuit alleging that he was denied timely and effective medical care for his back problems while he was incarcerated at Waupun Correctional Institution. He has sued several medical care professionals who evaluated and treated him between 2018 and 2021, and he has also sued prison staff that reviewed his complaints about his medical treatment. Limehouse seeks leave to proceed on claims under the Eighth Amendment.

      Limehouse's complaint is before the court for screening under 28 U.S.C. § 1915A. The complaint is 40 pages long, and it provides a detailed description of the treatment that Limehouse received from defendants for his back problems. Limehouse also filed more than 400 pages of exhibits, which he cites to in his complaint, and which includes hundreds of pages from his medical records. Limehouse's allegations and the medical records undermine his

contention that defendants acted with deliberate indifference to his serious medical needs. Instead, Limehouse's allegations and attachments show that defendants used medical judgment to make treatment decisions regarding Limehouse's back problems and chronic pain. So Limehouse's allegations fail to state a claim under the Eighth Amendment against defendants, and his complaint will be dismissed.

ALLEGATIONS OF FACT

Limehouse alleges the following facts, which I will accept as true for purposes of screening the complaint.

In February 2016, Limehouse injured his back during an altercation with another inmate at Waupun Correctional Institution. Since then, Limehouse has been in constant pain, and he has had difficulty walking, sleeping, and standing up straight. In May 2017, Limehouse received an MRI, which showed that he had two bulging discs, one herniated disc, and nerve root compression. In August 2017, Limehouse was referred to an outside neurosurgeon, Dr. Robert Mann, who recommended that Limehouse receive a steroidal epidural and gabapentin. Limehouse received an injection in November 2017, and he saw Mann for a follow-up in December 2017. Mann recommended that Limehouse receive another epidural injection in six weeks. Limehouse received the injection in March 2018.

On May 21, 2018, Limehouse met with defendant Dr. Cheryl Jeanpierre, a doctor at the prison, and told her that the medications and other treatments he had received were not relieving his back pain. Jeanpierre stated that she would order a second MRI to see whether Limehouse's injuries had progressed. Jeanpierre entered the order for the MRI in August 2018, and Limehouse had the second MRI on October 18, 2018. The radiologist assessed

Limehouse's degenerative changes as being stable. On December 18, 2018, Limehouse met with Dr. Mann again. Mann reviewed the MRI results and examined a bony protrusion on Limehouse's back. Mann thought that Limehouse's spine was fractured, and he recommended that Limehouse receive a CT scan to be sure.

In February 2019, defendant Jeanpierre sought approval from defendant Dr. Paul Bekx, the medical director for DOC, to prescribe pregabalin, a gabapentinoid nerve pain medication, to Limehouse. Limehouse had previously tried duloxetine, a different nerve pain medication, but it had been ineffective at relieving his pain. Bekx responded that Limehouse would likely benefit from a gabapentinoid, but asked Jeanpierre whether gabapentin had been helpful for Limehouse in the past. Bekx noted that prescribing a higher dose of gabapentin would be much less expensive than pregabalin. Jeanpierre responded that Limehouse had tried gabapentin without benefit, but Bekx still denied the request for pregabalin. Bekx and DOC's central pharmacy recommended that Limehouse try increasing his doses of duloxetine and amitriptyline, another nerve pain medication, along with gabapentin. Jeanpierre ordered the increased dosages for Limehouse, and Limehouse started taking gabapentin again in May 2019.

Limehouse had a CT scan in October 2019 at defendant St. Agnes Hospital. Dr. Mann reviewed the CT scan results and told Limehouse that the CT scan showed two fractured vertebra and other injuries, and that Limehouse might need more than one surgery to correct the problems. Mann recommended that Limehouse receive pregabalin, tramadol, and a steroid injection for pain relief and diagnostic purposes. Mann recommended that Limehouse return for a follow-up appointment after his injection.

On November 22, 2019, Limehouse met with defendant Mary Moore, APNP, at the prison. Limehouse told Moore about Dr. Mann's recommendations, and Moore stated that

Mann's report did not say that Limehouse's spine was fractured. She told Limehouse that he would have to contact Mann if he wanted Mann's report to be amended. (Moore was incorrect about Mann's report, as Mann's assessment of the CT scan states that Limehouse had "lumbar spondylolysis," which is a spine fracture.) Moore also told Limehouse that she would request approval for tramadol and pregabalin. Moore submitted a request the same day. An increased dosage of gabapentin was authorized as a substitute for the requests on December 5.

On December 16, 2019, Limehouse met with a different prison provider, defendant NP Sylvia Young. Young increased Limehouse's gabapentin dose to the maximum dose, and she ordered a TENS unit, ice, and physical therapy. She stated that she would request approval for tramadol and pregabalin if the other interventions did not provide him relief. Limehouse met with a physical therapist, who concluded that there was nothing he could offer Limehouse, and that injections or surgery would be the next step. Limehouse received a steroidal epidural in January 2020.

Limehouse complained that he was still having severe back pain with the high dose of gabapentin, so Young requested approval to prescribe pregabalin and tramadol on January 9, 2020. Her request to prescribe pregabalin was granted, but the request to prescribe tramadol was denied by defendant Dr. Daniel LaVoie. LaVoie stated that opioids are of limited value in treating chronic back pain, and that Limehouse's best opportunity for back relief would be with epidural steroid injections and pregabalin. Limehouse began taking pregabalin in February 2020.

In April 2020, a nurse reported seeing Limehouse pass medication to another inmate, and a blood test was ordered. A few days later, Limehouse was informed that his prescription for pregabalin had been stopped because the blood test results did not detect pregabalin.

(Limehouse denies that he was not taking his pregabalin properly.) Limehouse was prescribed desipramine and celecoxib to replace the pregabalin, but the new medications did not relieve his pain. He asked defendant Moore if she could resubmit a request for tramadol, oxycodone, or hydromorphine, but Moore stated that narcotics were not an option. She stated that she would increase the dosage of both of Limehouse's medications before trying something else.

In May and July 2020, Limehouse contacted health services and defendant Moore and stated that he did not want to be scheduled for any appointments outside the institution because he was concerned about contracting Covid-19. Moore responded that Limehouse was "in need of back surgery," that he was "almost out of options as far as pain medications," and that he should "seriously reconsider."

In August 2020, Limehouse received another CT scan. The outside radiologist who conducted the CT scan, defendant Dr. Daniel Camacho, opined that Limehouse did not have a spinal fracture. But when Dr. Mann reviewed the CT scan results in September, Mann stated that Limehouse's condition was deteriorating, that he had a fracture in his spine, and that Limehouse should take tramadol and pregabalin for the pain. Moore declined to prescribe tramadol or pregabalin. But then in January 2021, Moore prescribed tramadol and cyclobenzaprine, a muscle relaxer, for Limehouse's back pain.

ANALYSIS

Limehouse contends that defendants violated his Eighth Amendment rights by delaying or denying him adequate medical care for his chronic back pain. The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison officials from acting with "deliberate indifference" to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97,

103–04 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). A prisoner states an Eighth Amendment claim based on deficient medical care by alleging that (1) he has an objectively serious medical condition; and (2) defendants acted with deliberate indifference to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). The first element, an objectively serious medical condition, is one that a doctor recognizes as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Pyles*, 771 F.3d at 412. Limehouse's allegations about his back problems and chronic pain would establish that he has an objectively serious medical condition.

The second element, an official's deliberate indifference, relates to the official's subjective state of mind. *Arnett*, 658 F.3d at 750. A plaintiff must allege that an official knew of and disregarded a substantial risk of harm. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). In cases in which a prisoner alleges that he received some treatment for his medical condition, but that the treatment was inadequate, the relevant question is whether the medical provider's actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).

A medical provider may violate the Eighth Amendment if the provider prescribes a course of treatment without exercising medical judgment or prescribes treatment that the providers knows will be ineffective. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016). But it is not enough for a plaintiff to allege that he disagrees with a defendant's conclusions about the appropriate treatment, *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006), that other medical providers reached a different conclusion about what

6

treatment to provide the plaintiff, *Pyles*, 771 F.3d at 409, or even that defendants could have provided better treatment. *Lee v. Young*, 533 F.3d 505, 511-12 (7th Cir. 2008). Rather, plaintiff must show that any medical judgment by defendants was "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles*, 771 F.3d at 409.

Limehouse's allegations do not suggest that any of the individual defendants acted with deliberate indifference to his serious medical needs. Instead, the detailed allegations in Limehouse's complaint, in conjunction with the medical records that he submitted, show that his medical providers exercised medical judgment in making treatment decisions. The records also show that the non-medical providers reasonably relied on the judgment of the medical professionals.

**A.  Dr. Cheryl Jeanpierre, APNP Mary Moore, and NP Sylvia Young**

Limehouse contends that defendants Jeanpierre, Moore, and Young acted with deliberate indifference to his serious back pain by delaying his access to adequate medical care for his back and by failing to prescribe him effective pain medication. But Limehouse's allegations do not suggest that these defendants responded to his back pain with indifference.

Limehouse criticizes Jeanpierre for failing to order a follow-up MRI immediately after he saw her in May 2018. But Jeanpierre ordered the MRI in August 2018, and the MRI showed that Limehouse's injuries were stable. Dkt. 1-14, at 12–13. Limehouse does not allege that Jeanpierre intentionally delayed his treatment, or that the delay in Jeanpierre entering the MRI order increased Limehouse's suffering or resulted in him being denied a particular treatment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("[W]ithout evidence that defendants acted with the requisite bad intent in delaying the dispensation of his medication, Burton's

7

allegations are insufficient to sustain a deliberate indifference claim."). According to Limehouse's own allegations, Jeanpierre sought approval to prescribe pain medication for him that was recommended by the outside specialist. Dkt. 1-9, at 2. When her request was denied, Jeanpierre promptly ordered the medications and dosages recommended by Dr. Bekx. Dkt. 1-10, at 2. These allegations do not suggest deliberate indifference.

As for APNP Moore, Limehouse contends that she failed to prescribe him adequate pain medication and that she erred in interpreting Dr. Mann's assessment of Limehouse's CT scan. But Limehouse's records show that Moore requested approval to prescribe tramadol and pregabalin for Limehouse in November 2019, on the same day that she met with him to review his CT scan results. Dkt. 1-4, at 75; Dkt. 1-9, at 2. Her request was denied by Dr. LaVoie, who did not think that narcotics were not appropriate treatment for chronic back pain. Limehouse also contends that Moore acted with deliberate indifference when she canceled his pregabalin prescription in April 2020. But Limehouse's own allegations and medical records shown that the prescription was canceled after Limehouse's blood test results showed no pregabalin in his blood. Dkt. 1-22, at 2; Dkt. 1-24, at 4. And although Limehouse accuses prison staff of altering his test results, he has not alleged any facts suggesting that Moore acted with ill intent when she canceled his prescription.

As for defendant Young, Limehouse contends that she acted with deliberate indifference when she prescribed the maximum dose of gabapentin, a TENS unit, ice, physical therapy, and a steroid injection instead of narcotic pain medication. But Limehouse's medical records show that Young exercised her medical judgment in deciding to try alternative therapies before prescribing strong pain medication. Dkt. 1-4, at 74; Dkt. 1-13, at 2. And Limehouse's disagreement with Young's decision is not sufficient to state an Eighth Amendment claim. *See*

*Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019). Moreover, Limehouse admits that Young followed up on her initial treatment plan, and that she requested permission to prescribe pregabalin and tramadol shortly after Limehouse reported that the alternative treatments were ineffective. Dkt. 1-4, at 77.

In sum, none of Limehouse's allegations suggest that Jeanpierre, Moore, or Young failed to exercise medical judgment or departed substantially from accepted professional judgment in treating Limehouse. Limehouse may not proceed with an Eighth Amendment claim against them.

**B.  Dr. Paul Bekx, Dr. Daniel LaVoie, Chrystal Marchant, and BHS Central Pharmacy**

Limehouse contends that defendants Bekx and LaVoie violated his Eighth Amendment rights by refusing to approve effective medical treatment for his back, such as surgery or stronger pain medication. He also contends that defendants Marchant, the health services manager at Waupun, and BHS Central Pharmacy violated his rights by enforcing policies that prohibited narcotic use by prisoners with chronic pain. But Limehouse's allegations do not support Eighth Amendment claims against these defendants.

First, Limehouse does not allege that any of his medical providers, including any outside specialist, ever recommended that he receive back surgery. He alleges only that Dr. Mann stated at one appointment that Limehouse might need multiple surgeries for his back problems. But Limehouse does not allege that Mann ever recommended a specific surgery or that Limehouse himself requested approval for surgery. Limehouse's medical records show that Mann's recommendations during the relevant time period concerned medications, injections, and follow-up scans. So Limehouse has not stated an Eighth Amendment claim based on his contention that defendants Bekx, LaVoie, and Marchant should have approved surgery.

9

Second, Limehouse's allegations about being denied access to certain medications are not sufficient to state an Eighth Amendment claim. It is well established that medical staff are entitled to deference when choosing an appropriate pain reliever. *See Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019); *Burton*, 805 F.3d at 785–86 (doctor's refusal to prescribe narcotic did not violate detainee's constitutional rights, even though another doctor had prescribed it); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations."); *Norwood v. Gosh*, 723 F. App'x 357, 365 (7th Cir. 2018) ("treating pain allows considerable room for professional judgment"). And narcotics impose heightened risks of abuse and addiction, so it is appropriate for medical staff to be hesitant before prescribing them. *Lockett*, 937 F.3d at 1024. Limehouse's allegations would support an Eighth Amendment claim only if he alleged facts suggesting that defendants had failed to exercise medical judgment in assessing Limehouse's medication needs.

Limehouse's allegations and medical records show that defendant Bekx considered cost when he denied Jeanpierre's request to prescribe pregabalin. But this allegation alone does not state an Eighth Amendment claim. "[A]dministrative convenience and cost may be, in appropriate circumstances, permissible factors for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011). The constitution is violated only when harm occurs because administrative convenience is considered to the exclusion of reasonable medical judgments. *Id.* Here, Limehouse's allegations do not suggest that Bekx failed to use medical judgment in denying the pregabalin prescription. Limehouse attached medical records showing that Bekx thought that Limehouse would benefit from gabapentanoids, but that Limehouse could obtain benefit from increases doses of duloxetine,

amitriptyline, and gabapentin. Dkt. 1-9, at 4; Dkt. 1-10, at 2. In other words, Limehouse's own allegations and records show that Bekx exercised his medical judgment in deciding that Limehouse should try a different treatment before using pregabalin.

Similarly, Limehouse's allegations show that LaVoie approved Limehouse's use of pregabalin, but that LaVoie denied the request for an opioid pain medication because LaVoie, in his medical opinion, thought that opioids were of limited value in treating chronic back pain. Limehouse admits that LaVoie thought that Limehouse's best opportunity for back relief would be with epidural steroid injections and pregabalin. Dkt. 1-19, at 2; Dkt. 1-20, at 6. These allegations suggest that LaVoie exercised medical judgment when deciding which medications Limehouse should take.

In sum, Limehouse's allegations do not support an Eighth Amendment claim against Bekx or LaVoie. Nor do his allegations suggest that Bekx's and LaVoie's decisions were driven by unconstitutional policies of BHS Central Pharmacy or the health services manager.

## C. Dr. Daniel Camacho, St. Agnes Hospital, and Radiology Associates of the Fox River Valley

Limehouse contends that defendant Camacho, a radiologist employed by Radiology Associates of Fox River Valley, and who worked at St. Agnes Hospital, violated his Eighth Amendment rights by misreading the results of his CT scan in August 2020. But even if Limehouse is correct that Camacho misread the CT scan results, a misdiagnosis would be negligence, at most, and would not suggest that Camacho acted with deliberate indifference in violation of the Eighth Amendment. *See Robbins v. Waupun Correctional Institution*, 2016 WL 5921822, at *3 (E.D. Wis. Oct. 11, 2016) ("one isolated mistake does not allow a plausible inference of deliberate indifference") (collecting cases). In addition, Limehouse does not allege

facts suggesting that he was harmed by Camacho's interpretation of the CT scan results or that Camacho's interpretation affected Limehouse's treatment plan in any way. Accordingly, he made not proceed with an Eighth Amendment claim against Camacho.

### D. James Muenchow, Bett Dittmann, L. Alsum, Emily Davidson, Brad Hompe, C. O'Donnell, and Kevin Carr

Finally, Limehouse has sued several individual defendants involved with the inmate complaint review system. Limehouse alleges that he filed several inmate complaints about his medical care, but that these defendants repeatedly rejected his claims and failed to intervene to ensure that he was receiving adequate treatment.

But Limehouse's allegations do not support any constitutional claim. Limehouse's exhibits show that these defendants contacted health services staff each time Limehouse complained about his medical treatment. Dkt. 1-36 to Dkt. 1-42. After medical staff explained the treatment that Limehouse was receiving, the complaint examiners dismissed Limehouse's complaints. These individuals—who are not medical professionals—were entitled to reasonably rely on the medical judgment of Limehouse's treating physicians. *Giles v. Godinez*, 914 F.3d 1040, 1049–50 (7th Cir. 2019). Accordingly, Limehouse may not proceed on any Eighth Amendment claim against these defendants.

### E. Summary

Limehouse's allegations and attachments show that he has received ongoing treatment for his back pain since his injury in 2016. According to Limehouse's own allegations, he has had physical therapy, a TENs unit, steroidal injections, more than 10 different prescription-strength painkillers, multiple diagnostic scans, and appointments with outside specialists. Dkt. 1, at 18. Limehouse also alleges that his providers adjusted his treatment when the treatment

was ineffective, and his medical records confirm this. Although Limehouse may have wanted different treatment, "an inmate is not entitled to demand specific care, and medical professionals may choose from a range of acceptable courses based on prevailing standards in the field." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (internal quotation marks omitted). Limehouse's allegations do not suggest that any defendant acted with deliberate indifferent to his serious medical needs or acted without exercising medical judgment. Accordingly, his complaint will be dismissed for failure to state a claim upon which relief may be granted.

ORDER

IT IS ORDERED that:

1. Plaintiff Steven Limehouse's complaint is DISMISSED for failure to state a federal claim upon which relief may be granted.

2. A strike shall be recorded in accordance with 28 U.S.C. § 1915(g).

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered May 21, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge